

CR
6-6-18




**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 JUL 13  AM 7:58
CLERK'S OFFICE
AT BALTIMORE
BY_____K_____DEPUTY

---

| | | | |
|---|---|---|---|
| *Daniel C. Gardner*<br>*Assistant United States Attorney*<br>*Daniel.Gardner@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201* | *DIRECT: 301-344-0041*<br>*MAIN: 301-344-4433*<br>*FAX: 301-344-4516* |

June 6, 2018

Joseph Murtha
Murtha, Psoras, and Lanasa LLC
Heaver Plaza Suite 200
1301 York Road
Lutherville, MD 21093

Gary Edward Proctor
Law Offices of Gary E Proctor LLC
Eight E Mulberry St
Baltimore, MD 21202

     Re:   <u>United States v. Garrion McCellan</u>,
            Criminal No. CCB 16-0235

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **June 15, 2018**, it will be deemed withdrawn. **<u>The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)</u>**. The terms of the agreement are as follows:

Offenses of Conviction

    1.    The Defendant agrees to plead guilty to Counts One and Eight of the Third Superseding Indictment now pending against him, which charges him with Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 and Possession of a Firearm in Furtherance of a Drug Trafficking Crime Causing Death in violation of 18 U.S.C. §§ 924(c) and (j). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One – Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances: (1) two or more persons agreed to violate the federal drug laws by possessing with the intent to distribute a mixture or substance containing one kilogram or more of a detectable amount of heroin, a Schedule I controlled substance; and (2) the Defendant knowingly and voluntarily became a member of the conspiracy.

Count Eight - Possession of a Firearm in Furtherance of a Drug Trafficking Crime Causing Death: (1) the Defendant used, carried, and brandished a firearm; (2) during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, as charged in Count One of the Indictment; and (3) the Defendant caused the death of a person through the use of the firearm.

Penalties

2.      The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

Count One - Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances: a mandatory minimum term of imprisonment of ten years, with a maximum of life, followed by a term of supervised release of at least five years, and a fine of $10,000,000.

Count Eight – Possession of a Firearm in Furtherance of a Drug Trafficking Crime Causing Death: a mandatory minimum term of imprisonment of ten years, up to life, with a maximum sentence of death, to run consecutive to the Defendant's sentence on Count One, five years of supervised release, and a $250,000 fine.

In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

<u>Waiver of Rights</u>

3.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

3

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

4.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

5.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following:

### Count One
#### (Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances)

a.     Pursuant to U.S.S.G. § 1B1.2(c), a plea agreement containing a stipulation that specifically establishes the commission of additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses. In the attached stipulated Statement of Facts, the defendant has admitted to committing two acts constituting first degree murder. Accordingly, pursuant to U.S.S.G. § 1B1.2 the offense level for Count One will be the combined offense level for *both* murders, an attempted first degree murder, and the drug conspiracy.

### (Group One – Drug Conspiracy)

b.     Pursuant United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(6), the base offense level for the drug conspiracy is **30**, because at least one kilogram but less than three kilograms of heroin was reasonably foreseeable to the Defendant and within the scope of his agreement.

### (Group Two – August 10, 2015 Murder of SE)

4

          c.      The base offense level for *Group Two* is **43**, pursuant to U.S.S.G. § 2A1.1, because the conduct constituted First Degree Murder.

*(Group Three – August 10. 2015 Attempted Murder of DP)*

          d.      The base offense level for *Group Three* is **33**, pursuant to U.S.S.G. § 2A2.1, because the conduct constituted Attempted First Degree Murder.

          e.      A **3**-level upward adjustment, pursuant to U.S.S.G. § 2A2.1, because the victim sustained bodily injury. The total offense level for *Group Three* is **36**.

*(Group Four – October 7, 2015 Murder of EN)*

          f.      The base offense level for *Group Four* is **43**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2A1.1, because the conduct constituted First Degree Murder.

          g.      The drug conspiracy, murders, and attempted murder do not group pursuant to U.S.S.G. §§ 3D1.2(a) and (d), because the offenses involve multiple victims from separate acts or transactions. Pursuant to U.S.S.G. § 3D1.4, *Groups Two and Four* each count as one unit, *Group Three* counts as a ½ unit, but *Group One* does not count as a unit because it is 9 or more levels less serious than First Degree Murder, for a total of two units. The 2½ units increase the offense level by **3**. Therefore, the combined offense level is **46**.

### Count Eight
*(Using. Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence)*

          h.      Pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) and U.S.S.G. § 2K2.4, the parties agree that there is a mandatory minimum term of imprisonment of **ten years** as to *Count Eight*, which must be imposed consecutively to the term of imprisonment imposed by the Court on *Count One*. Pursuant to 2K2.4(b), the Defendant's Sentencing Guidelines range for Count Eight will be **120 months**.

This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the Defendant obtains a **3**-level reduction, the final offense level will be **43**.

6.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level.

7.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant intends to argue for any 18 U.S.C. § 3553(a) factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer and government counsel at least 14 days in advance of sentencing of the facts or issues he intends to raise.

### Rule 11(c)(1)(C) Plea

8.      Taking into account all of the 18 U.S.C. § 3553(a) factors and the advisory Guidelines, including any potential changes to the calculation and applicability of the advisory Guidelines, the parties stipulate and agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence between **300 months (twenty-five years) and 360 months (thirty years) imprisonment** is the appropriate disposition of this case.

9.      This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

10.     At the time of sentencing, this Office and the Defendant will recommend that the Court impose the agreed-upon sentence between **300 months (twenty-five years) and 360 months (thirty years) imprisonment.**

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Public Benefits in Drug Cases

12.     The Defendant understands and acknowledges that under 21 U.S.C. §§ 862 and 862a, a person who has been convicted of a federal offense involving the distribution or possession of controlled substances may be denied certain federal and state benefits such as loans, grants, or food stamps.

### Waiver of Appeal

13.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised.

c.      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Obstruction or Other Violations of Law</u>

15.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

<u>Court Not a Party</u>

16.      The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the

7

Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

17.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____

Daniel C. Gardner
Christopher J. Romano
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorneys. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

_____6/19/18_____
Date

_____
Garrion McCellan

We are Garrion McCellan's attorneys. We have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises us that he understands and accepts its terms. To our knowledge, his decision to enter into this agreement is an informed and voluntary one.

_____6/19/18_____
Date

_____7/12/18_____
Date

_____
Joseph Murtha, Esq.

_____
Gary Edward Proctor, Esq.

9

## ATTACHMENT A:
## STIPULATED FACTS – UNITED STATES v. GARRION MCCELLAN

*The parties hereby stipulate and agree that if this case proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

Between at least July 2015 through April 28, 2016, the defendant, **GARRION MCCELLAN** (hereinafter "McCELLAN") combined, conspired, confederated, and agreed with co-defendants DeAndre Smith, Derrell Carroll, and with others, to possess with intent to distribute and to distribute heroin and fentanyl. During that time-period, Smith managed a drug trafficking operation in and around an apartment complex known as "Pedestal Gardens," located at the 300 block of McMechan Avenue. In addition, Smith, Jamal Carter, and Dymir Rhodes maintained a "stash" house at 1111 Dlong Road, Catonsville, Maryland. Smith, Carter, and Rhodes used the apartment to store drugs and drug proceeds and to process and package drugs for distribution. The organization distributed "packs" of heroin and/or fentanyl. Typically, each "pack" contained between 25 and 50 gel capsules of the drug, or approximately 2.5 to 5 grams.

During that time period, Rhodes operated one of the organization's drug shops at Pedestal Gardens, which Smith supplied with heroin and fentanyl. Rhodes, in turn, supplied **McCELLAN** and Carroll with packs of heroin and fentanyl, which they then redistributed to drug users at Pedestal Gardens. **McCELLAN** and Carroll routinely distributed forty to fifty packs of heroin and fentanyl in one day, or approximately 100 to 250 grams of heroin and fentanyl.

In or before August 2015, SE was a drug dealer and distributed drugs in the area surrounding Pedestal Gardens and, in particular, the 1700 block of McCullough Street in Baltimore, Maryland. Sometime on or before August 10, 2015, Smith directed **McCELLAN** to kill SE because SE was encroaching on the organization's drug territory. On August 10, 2015, **McCELLAN** received information that SE was on the corner of McCullough Street and he, Smith, and Rhodes went to the location to kill SE. Upon arriving at the 1700 block of McCullough Street, **McCELLAN** located SE outside of a corner store, brandished a firearm, and shot SE multiple times.

Members of the Baltimore Police Department ("BPD") responded to the 1700 block of McCullough Street and discovered SE lying between two parked cars, suffering from multiple gunshot wounds. A second victim, DP was located at the corner store, suffering from a single gunshot wound. SE was later pronounced dead at the hospital. DP survived.

According to the Office of the Chief Medical Examiner ("OCME"), SE died as the result of gunshot wounds to the chest, lower back, left hand, left forearm, and right buttock.

**McCELLAN** expected to receive something of value from Smith in return for killing SE.

In or before October 2015, EN robbed drug dealers in and around Pedestal Gardens. Sometime on or before October 7, 2015, Smith directed **McCELLAN** to kill EN, because EN was disrupting the organization's drug distribution operation in the area. On or about October 7, 2015,

McCELLAN and Carter contacted EN as part of a ruse.  McCELLAN and Carter told EN that they wanted to rob other drug dealers and wanted EN's help.  McCELLAN and Carter then met EN at the 1400 block of Druid Hill Avenue.  EN was operating a Chevy Malibu and brought a 9mm Ruger pistol and gloves in preparation for the planned robbery.  While EN was putting his gloves on, McCELLAN brandished a firearm and shot EN multiple times at close range.

BPD officers responded to the 1400 block of Druid Hill Avenue and discovered EN in the driver's seat of the 2004 Chevrolet Malibu suffering from multiple gunshot wounds to the head.  Underneath the driver's seat, BPD officers discovered a 9mm Ruger Strum pistol, which was loaded with thirteen 9mm rounds.  EN was wearing one black glove and another glove was located on the floor of the vehicle.

According to the OCME, EN suffered two gunshot wounds to the left side of his neck and one gunshot wound to the head.  There was sparse gunpowder stippling on the head and neck wounds, indicating a close range discharge.

McCELLAN expected to receive something of value from Smith in return for killing EN.

On April 28, 2016, law enforcement officers executed a search warrant at 1111 Dlong Road, Apartment F, Catonsville, Maryland.  At the time of the search warrant, officers observed co-defendant's Smith and Rodney Scott entering and exiting the premises and Carter was located inside the residence.  During the search, in several locations in the kitchen and dining room, officers discovered approximately 1,186 grams of fentanyl, 575 grams of heroin, and nine grams of cocaine, all of which was packaged in clear plastic baggies.  Officers also discovered approximately two kilograms of Phenacetin, a substance commonly used to "cut" drugs, as well as $15,465 in U.S. currency, sifters, a digital scale, capping trays, gel capsules, and plastic baggies, which are used to package drugs.  CARTER also had $80.85 in U.S. currency in his pocket.

During the course of his participation in this conspiracy, McCELLAN was an active member of the gang known as "the Black Guerilla Family," or "BGF."

During the course of the conspiracy, the quantity of heroin within the scope of McCELLAN's agreement and reasonably foreseeable as to McCELLAN was equivalent to at least one kilogram but less than three kilograms of heroin.

\* \* \*

I have read this statement of facts and carefully reviewed it with my attorneys. I acknowledge that it is true and correct.

6/19/18
Date

Garrion McCellan

We are the attorneys for Garrion McCellan. We have carefully reviewed the statement of facts with him.

6/19/18
Date

7 — 12 - 18
Date

Joseph Murtha, Esq.

Gary Edward Proctor, Esq.

12